Ruffik, Chief Justice,
having stated the case as above, proceeded as follows: The first exception is, that in stating the accounts of W. W. Chaffin and Co., the master has improperly allowed the defendant Nathan, for the payments of sundry debts specified, amounting to $7,900:44, as the debts of the last firm, whereas they were the debts of the first *260 of which he (Nathan, the younger,) was a member.— In connexion therewith, the same parties, except, secondly, that the master has not, but ought to have, stated acconts between Wo C0_Partnerships, instead of assuming that all out-standing debts were due from the second; and should fiave required the defendant Nathan, to file a statement' of the balances of debts due by each of the firms, as he had the custody of their books.
Where a partnership is dissolved, the partners retires, the remain-j ig mem hers íorm a new copart-nership under the same name and style, and after» wards a note is'given in the name of the firm, by one who was the active partner in both con-cems, it presumed outstanding debt of^ tile of á debt of out some evidence ot the fact,
The first exception is unsupported by the proofs, and must therefore be overruled. Upon looking into the evidence, there could not be the least doubt, that all the debts are properly those of the second firm, excepting only two items of $556, and $1,356:03. The other debts are upon bonds and notes given in the name oí W. W. Chaffin and Co., long after the year 1818, and, in most instances, shortly previous to the deaths of the partners in 1823. Being pressed by that circumstance, the counsel for the exdeptahts, have endeavor- ' L ' ed to shew that there were outstanding debts of the first firm) when Nathan, the younger, retired; and thence to infer, some 0f the latter debts were contracted to raise funds for the discharge of the former. But the inference is too forced to be acted on by the court, in the incidental manner now required — especially as in most of the cases, besides the presumption from the dates of the securities, there is direct proof that the debts were for money loaned, or goods sold to the second firm. In addition, it is to be remarked,, that the books of accounts of both firms are produced before the master, and from an inspection of them, it does not appear that the second paid any money, or assumed any debt for the first; for there is not even an account raised between 7 4 them. The defendant Nathan, also, in his examination upon the acceptant’s interrogatories, states explicitly his belief, t^a(' eveiT °f ^ finxi was 0Ut °f 3t;S effects, collected by the managing partner W. W. Chaffin — above all, it is in proof, by witnesses, that Nathan Chaffin, the el- and younger, both claimed to be entitled to profits made in the first business, and called on William W. Chaffin to . ... state an account of that business, and pay to them their shares. This he neglected to do; but, at no time during the *261 five years that elapsed between the dissolution and his death, did-he" intimate to the other partners that there was a loss on that business, or claim any thing from the defendant Nathan on that score; but, on the contrary, clearly admitted the contrary, by paying large sums on Nathan’s personal account with both firms. With the exception of the two items already specified, the first exception must therefore be overruled. So also must the second exception for the same reasons. It is not true that the master has assumed any thing in favor of the first firm; for there is no evevidence that any of the debts ought to be charged to that firm; nor was he bound to state an account between the firms, when the parties did not furnish him with any data on which to found it; and the books, as already mentioned, do not profess that there were any dealings between them. If such an account were material to the exceptants, they ought to shew it, and make out their view of it from the materials, thus as much in their power as the master’s. Nor was Nathan Chaffin bound to do more than deposit the books in the office, for the use of other party, since he founded no charge upon them. r b i
And the master, in st uing an account of the debis of the new firm, is not bound to slate an account between the Cen.s!Then nish him with any found it, not shew was any jijeen them"
. With respect to the two sums of $556, and $1,356:03, not yet disposed of, a reference to the evidence somewhat more particular, is requisite. The former sum is claimed by Nathan Caffin, the younger, on a note made to himself by W. W. Chaffin and Co. on the 25th of January, 1823. The latter is for a sum paid to the Bank of Cape Fear, being the balance of a debt that had existed for some years, and due upon the note of William W. Chaffin, endorsed by the defendant Nathan and another person, as sureties; which debt is alleged by the defendant to be really the debt of the last firm of W. W. Chaffin and Co. Upon the nature of these two debts, the exceptauts examined the party Nathan Chaffin, minutely before the master; aud in his answers to the interrogatories, ho gives a particular, and, as far as can be perceived, a consistent and credible account of them. It is, that he had an account with each firm for his personal dealings, consisting of purchases of merchandize on his part, and of sales of tobacco and other produce to the stores; and that he had, besides, made cash advances for the first firm, before *262 1S18, to the amount of about $8,000, which was reduced by returns of cash to about $5,000, when he retired; that he, ; ' 1 . Nathan, owed a debt to the bank of about $2,000, which, it was agreed, some time after 1818, the new firm should as- ° . , ... , , , sume, and tor the amount charge him in account: and that the same was then added to the existing debt of the firm at bank, and a note given for the whole, in the name of W. W. Chaffin, but really for the firm. That afterwards, viz: on the 25th of January, 1823, this defendant settled with William W. Chaffin his personal accounts in both firms, and thereupon found a balance due to him, upon the whole settlement, of $556, for which W. W. Chaffin and Co’s note was given to him. In this settlement, he admits, were included the balance due on the note of $8,000, and also debts from him to the old firm of $4,105;63, as appears in their books. The residue consisted of his dealings in the new firm and of the bank debt aforesaid. In this statement, this defendant is supported by an inspection of the books of both firms, so far as respects the amount of his personal dealings, and that entries were made therein by W. W. Chaffin himself, of the date of the settlement. But the books are very imperfectly kept, and do not shew the particulars of the settlement; nor contain an entry of ’either note to Nathan Chaffin, the younger, nor of the charge of the sum assumed for him at bank. But the transactions at bank appear, by the testimony of the Cashier, to have been correctly stated.by the defendant in all respects, except that the Cashier does not know whether the debt due upon the note of William W. Chaffin was his own debt or that of the firm. But, upon that point, a person, who was a clerk in the store, states that he understood the money went to the use of the firm, and that the debt was theirs, although no entry was made of it. Moreover, John A. Chaf-fin, one of the original plaintiffs, who had also been a clerk in the store, and was one of the executors of his father, Nathan, the elder, paid out of the assets of his testator a part of that debt, as being a debt for which his testator was liable.
Under these circumstances, the Court must regard the allowance of these sums as credits of the defendant, Nathan, in the disbursements of the assets of the firm, as proper. The *263 form of the instrument makes it prima facie evidence of the sum of $556 being: a debt by the new firm. The presumption is fortified by the fact, that it was against the interest of W. W. Chaffin to make it a debt of the new firm, if it were really not so, as it made him liable to pay one half instead of one third of it; and there is no reason to suspect him of a design to do injustice to his father for the sake of his brother. The same conclusion with reference to the other sum of $1,356:03 could not have been reached, perhaps, with same entire satisfaction, had not the exceptants examined the party' before the master, and read his examination on the hearing. It has been thus made evidence for him, so far as it is reéponsive to the interrogatory, in the same manner . . , , G , , , , , . . . upon the same principle, that the defendant's answer is dence for him. In suits for accounts, it is impossible the pleadings can put every matter precisely in issue; and. fore, when the parties go before the master, the plaintiffs may help out their bill by special interrogatories to the other party. But then the interrogatories must be looked at in the light of being particular charges supplemental to those more general ones of the bill; and so the responses are, in this sense, to be transferred to the answer, and made evidence in the cause, though subject to contradiction. With the whole of this evidence before us, there can be no doubt of the justice of this item as well as the others. The whole of the first exception must therefore be overruled; as also must the ninth exception, which Especially confined to this sum of $1,356:03 as being the own proper debt of Nathan, the younger, or of William W. Chaffin, and not the debt of either firm,
. _ ™.1® a re-nerUterffie ^ ffie formation ot firm laming6" name, is the^ein'Tf *h0® n®7 “he partner who fhe active*6 <*™s, d>>s tion"!”5* fact, that by no™ he"1"" se”ftohpay !iU'ser of the debt
The third exception is unfounded. The defendant, Na-a than, has filed an account of the assets of the second firm that came to his hands, amounting to the sum of $3,122:40; upon which the master has based his account current between that defendant and W. W. Chaffin and Co.
The two next exceptions, 4th and 5th, assume that there was a loss on the partnership, and insist that the defendant, Nathan, should have retained, out of the assets of his intestate, William W., for the amount of the debt of the intestate to the father, in respect of such loss, and pleaded the same in *264 bar of the creditors of William, or, as administrator of Wil-W. confessed judgments to the creditors of the co-partnership, and pleaded the same in bar of his intestate’s sepa-raIe cre^itors, so as to give the estate of the testator, Nathan, the elder, the aid of the assets of William W. in paying the <jebts of the firm.
There are several reasons why these exceptions cannot be sustained. In one view, the exceptants suppose, that as executor of the father, the defendant might have retained of the assets of the brother, to make good the debt to the former, on account of the losses. If this be-admitted, it can avail the ex-ceptants very little; for the claim of the father’s estate upon the son’s' would be but a simple contract debt, and all the separate debts paid or retained out of the assets of William W. Chaffin, were due upon specialties, except the sum of $369:79, paid in the life time of William W., by the defendant, Nathan, as his surety by note. The truth is, however, that the executor did not, and. could not know — as far as appears to us — that his testator would be a creditor of bis intestate upon the settlement of the business, nor that the assets of the firm would not discharge all its liabilities. Upon inspecting the books, they appear to have been so wretchedly kept, that no person could ascertain the state of the business from them, or know to whom the firm was indebted, or how the accounts between the partners would stand. There is in them no stock account, cash account, profit and loss account, merchandize account, or an account of any creditor of the concern. They simply consist of accounts against persons to whom goods were sold, and of the payments made therefor. The consequence was, that it was only after all the debts of the firm were paid and the business adjusted, that it did appear or could appear to the executor, that a retainer by him out of the assets of the intestate would be necessary for the security of the testator’s estate. Those two exceptions are, therefore overruled also, except as to the before mentioned sum of $363:79. As to that sum, an interesting question is presented, which the state of this case will, perhaps, make it unnecessary to decide, as, probably, over and above that, the debt of the testator’s estate to the party, Nathan, the younger, will *265 exceed the value of the assets which he can reach. That question is, whether, inasmuch as this is a simple contract debt, the money retained out of the assets of the intestate on that account, can be kept by Nathan exclusively for his own use, or ought not to be applied in whole or in part towards the claim of the father’s estate, which is of the same dignity. We incline to the opinion, that he who undertakes the office of executor is not at liberty to take care of himself to the ex-elusion of his testator’s estate; and that the money in the defendant’s hands ought, at least, to be rateably divided between them. For, admitting that the separate estate of a partner must first pay his separate debts, yet the debt of one partner against another, in respect of a loss in the joint business, when ascertained, is a separate debt; and, therefore, the claim of the testator, and of the defendant, as to'this sum of $363:79, stand, in all respects, on the same footing. For the reason already mentioned, the question as to this particular sum is reserved for the present.
The 6th and 8th exceptions present, in different forms, substantially the samé questions that have been already decided. In taking the account of the assets of the firm, in the hands of the defendant, he is charged with the sum of $1,528:72) as the debt of the testator, for his personal dealings with the firm. Of course, the defendant must be credited with the same sum in his account with the testator. This does no injustice; for,- by the insolvency of the firm and of the other partner, the father has become the firm in respect to creditors, and those entries are nothing more, in fact, than cross entries. So of the sum charged to the testator as the share of W. W. Chaffin of the losses of the partnership, it must be said, that the objection is, only as to the manner of the master’s stating it. In substance, the report charges to the testator all that his executor paid for the firm, after exhausting the assets of the firm; and that is clearly right, when it is ascertained that the other partner is insolvent. The 6th and 8th exceptions are therefore disallowed.
The 10th exception embraces several items of retainer by Nathan, the younger, against the estate of his intestate William W. Chaffin, amounting in the whole to $3,052:30. As to *266 the suras of $389:61, $107:56, $96:09, $250:69 and $430:00, Parts t*iat ^ar8'er sum’ court thinks the credit supported by plain and satisfactory vouchers, namely, notes and bonds of the intestate to the defendant Nathan. It was said that there was a presumption, that these debts were mclud-e<^ *n sett*ement °f the 25th of January, 1823; on which the note for $556 was given. But the presumption is to the contrary, as that was the note of W. W. Chaffin and Co., and these are the private debts of William W. Chaffin alone. The other items, however, require explanation, and they will be referred back to the master for further enquiry,
rnent'by one, of ins iviihaoo-totooiu.de his accounts •with an dividual member the firm*
Que js for a note dated the 15th December, 1821, for the sum of $339, payable six months after date to N. Chaffin, Chaffin. It is objected to, because it is torn in two, and was probably cancelled, and because it was included in another J 1 note, of the same date, for $402, payable a year afterwards, Nathan Chaffin, administrator of Peter Dowell, and also witnessed by A. H. Chaffin. The defendant, on his examination, stated that the note for $339, was given for a negro, sold by him as administrator of Dowell, and that the clerk of the sale, A. H. Chaffin, took and delivered it to him, in its present condition, saying, that he tore the paper as it is, in separating it from other writing on the same sheet. That statement is supported by the testimony of A. H. Chaffin.. — . This may be so, and probably is, from the circumstances that there are different sureties to the two notes, and that they are payable at different periods, according to the credit on which the negroes and other parts of the property were sold. But it is not usual for persons to give two bonds at the same sale, and nothing is said by the witness, of the bond for $402; and, therefore, it will be more satisfactory to have the subject re-examined, so that it may appear from the account of sales, or the sureties to the notes or otherwise, that the two notes were really, given for different debts.
Another doubtful item is, the sum of $1,062:50, claimed on a transaction of this sort. In October, 1822, Nathan and William W. Chaffin borrowed from the bank at Salisbury, on a note made by Nathan, and endorsed by the other, the *267 sum of $2,000, to be invested, as they said, in a pork speculation. On the 25th of January, 1823, William W. gave the other, his covenant to pay one half of the sum in regular bank instalments; and, on that instrument, this charge is founded. The court would feel more secure of making a right decision, if it appeared that the speculation were abandoned, or that it had been completed, and the pork sold or divided; upon which points, or any others relative to the matter, the defendant can be again interrogated or the parties offer proof.
is no f™e'pt!o°n “in-that* ifJTas üp0nCmat-the reference'
The remaining items arise upon two notes, in which, from inspection, it is not clear whether they were intended to be payable to Nathan Chaffin, Junior, or Senior, as the word is abbreviated, and the letters imperfect. The one is for $110, dated March 10th, 1822, and the other is for $200, dated June 14th, 1821, The latter may be explained by proof, as to which of the persons sold the land in Ashe county that is mentioned in it. This note has obviously also been cut or mutilated at the bottom. The master thinks it was probably done in the office, in separating it from the deposition in which its execution was proved. But as it has to go before the master again, the plaintiffs will have the opportunity of interrogating the defendant upon every part of the case.
All the exceptions are thus disposed of, except? the 7th and 11th, which object that the master has not found the values of the lands devised to John A. and George H. Chaffin, pectively, nor the value of the personal estate of the testator which came into the hands of John A. Chaffin: and also ject, that, the plaintiffs in the second bill cannot charge John A. and George H. in respect of the real assets. These, as exceptions, cannot be sustained, because the reference did include the subjects. Whatever benefit the exceptants may be entitled to, from the matter therein set forth, they will, of course, have, upon any motion that may be made for further directions.
With the exception of the points re-committed to the master, as herein stated, the report must therefore stand confirmed.
Per Curiam. Order accordingly.